Good morning. The first appeal of the two argued cases today is Bartels Trust v. U.S. 2009-5122. Mr. Bartels. Thank you, Your Honor. Good morning. In brief, the reason the Cornell Trust, I call it the Cornell Trust because that's the way I briefed it, the Cornell Trust has filed this appeal was because the trial court failed to follow this court's clear admonition in its 2006 decision in Coltec Industries that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims. In an overview, there are three sets of applicable precedents from these three courts that the trial court undeniably failed to follow in its decision. The first of the three sets of applicable precedents are their numerous decisions that have followed the so-called Duquesne rule of statutory construction from the Supreme Court's venerable decision in 1857 in Brown v. Duquesne. The Supreme Court explicitly reaffirmed this rule in 1983 in its Bob Jones University decision, which was an exempt organization tax case, and as the Supreme Court stated this Brown v. Duquesne rule, it is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute. The vibrancy of this 2000, excuse me, this 1983 Bob Jones decision, the vibrancy in this court was reaffirmed 20 years later. Could you give the quote again that you cite from? Yes, please. It's 461 U.S. at 586 and again it is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute. This court, two of the judges on this panel, were involved in the decision which unfortunately I overlooked when I briefed, but it's the White v. Department of Justice decision at 328 Fed 3rd 1361. Well how would this defeat, I mean you're dealing with the unfair competition purpose, right? Correct. How would that defeat the purpose of the clear language of the statute to include things other than unfair competition or not require that as a threshold? Certainly, the sections relating to exempt organizations of the code 501 through 514 were specifically enacted to go ahead and benefit charitable organizations. The only restrictions in those sections were to go ahead and stop any abuses undertaken by exempt organizations, which of course was why the UBIT was enacted in 1950 and then expanded in 1969. That's the why, that's not the what. I mean the statute doesn't refer to anything other. Here are the rules, here's what's permitted, and here's what's not permitted, correct? The clear language of the statute. Yes, Your Honor. So you're arguing that we should interpret that clear language to meet all of those criteria, the government also has to demonstrate that there's unfair competition in order for those provisions to apply? Yes, Your Honor, because you look at the mischief rule which this court went ahead and the two members in this panel which were involved in the CNG transmission via the decision that looked at what the underlying statutory purpose was. And that particular decision, which was issued just late 2009, and that decision the court found that the mischief that the Congress was focused on, looked at the legislative history in the 1984, I believe it was amendment, with respect to voluntary employment, sorry, involuntary employee beneficiary associations, looked at what the purpose was and there was a tax only if that statutory purpose was triggered. If not, the tax would not be applicable and that's the instance we have here, where you focus on an abuse, otherwise there would be no tax with respect to charitable organizations, the purpose again of 501c3. So you have the recently passed health care reform act, which is thousands of pages, and the purpose that everyone articulated hypothetically, but I think it's somewhat true, is that this is going to ensure that everybody is going to have affordable health care. So what the courts would only apply or the administrators would only apply the specific provisions in the statute with the gloss that unless it saves money or provides affordable health care, we're not going to enforce any of those provisions. I just want to see, I'm having a hard time understanding your purpose argument and how it affects, infects the statute. Yes, I think there's a difference between the case we have here today and the Health Care Act. The Health Care Act was the first time there was a comprehensive federal legislation with respect to health care benefits for the citizens of our country. In sharp contrast, section 514 was in addition to the tax code, in the very first tax code in 1916, if I remember correctly, exempt organizations, charitable organizations were exempt from the tax code and therefore when 512b4, which is the statutory section at issue here, when it was enacted in 1969, that was 50 years after the code was enacted and it was only specifically to stop a particular abuse, whereas the tax, sorry, the health care was to go ahead and provide a benefit for everybody in the country. The analogy or analogous situation would be is if there were abuses five years from now with respect to the new health code or health care legislation, then you would go ahead and apply the Bob Jones University rationale of the Duquesne rule, because as an illustration, in coming back to White v. Department of Justice, in Your Honor, Judge Mayer's dissent, you indicated that the majority again, which you, Judge Prost, were in, although it was a Judge Michel authored opinion, you indicated that in that decision, and again in your dissent, Your Honor, that the majority was applying the Bob Jones University and specifically cited the Bob Jones University decision, that the majority was looking at what was the underlying purpose of the statute. That was a personnel case, it wasn't a tax case, but in that decision, the court, the majority went beyond the literal language of the statute to look at what was the underlying purpose to see if, in fact, that statute were to be applied in the particular effects before the court. And also, and further, the Coltec Industries case, which is a very broad decision, of course, in 2006, where this court said it was a judicial tool to go ahead and go beyond the literal language of the tax code in order to apply it. And this is a case where, basically, in the context of the tax code, was used in the Jade Trading decision, which was issued just three months ago by the circuit in 598 Fed 3rd at 1372. So to come back to the Your Honor's question, there is specific instances where literal compliance with the tax code was not enforced by this court because the underlying purpose, the specific section of the tax code, would be not effected. Assuming we were to agree with you, why aren't the margin finance securities here, which the court has concluded possess the characteristics required to constitute a trade or business, why isn't the unfair competition purpose served? Because you're preventing unfair competition with respect to margin finance securities, which are trade or business. Well, two things, Your Honor. First of all, this court has said in two Court of Claims decisions, predecessor court has said that margin, excuse me, securities investing by an exempt organization is not the conduct of a trade or business. The Supreme Court in its Burnett decision starting in 1932, there are approximately 10, said that investing, including margin investing, is not a trade or business. Importantly, Your Honor, in this case at the trial level, it was undisputed operative fact that the Cornell Trust did not engage, excuse me, did not gain any competitive advantage by its investment activity, including margin investing, over any other buyer or seller in the securities market. And further was an undisputed operative fact at the trial level that the Cornell Trust margin investing had, in fact, two positive and pro-competition effects on the securities markets. There is no case that says, Your Honor, that there is, that in addition to the facts that are before, undisputed facts that are before this case, the stipulated facts, if you will, by implication. There's no printed decision that says margin investing by an exempt organization is the conduct of unfair trade and business. The only reason we're here in this court, Your Honor, is simply because margin investing, of course, is debt finance, which then triggers Section 512b4, and of course this appeal centered on, is that the literal language of that statute to be applied to this particular case. So the first set of precedents which the Court of Federal Claims failed to follow were the Duquesne rule of statutory construction, which I've discussed. The second set of precedents which were not followed by the Court of Federal Claims is, was there a clear statutory or is there a clear statutory purpose to the unrelated business income tax? And the answer is clearly yes. In the trilogy of decisions by the U.S. Supreme Court, the Court stated with all clarity, particularly in the American Bar Endowment case in 1986, that the undisputed purpose of the unrelated business income tax was to prevent tax exempt organizations from competing unfairly with businesses whose earnings were taxed. This singular tax policy of the UBIT was confirmed in this Court's decision in American College of Physicians in 1984, which was reversed by the Supreme Court on other grounds. And similarly with respect to the 1969 amendment, which I've discussed before, which then made, expanded significantly the taxation of debt financed income in the House and Senate reports, it was very clear that the purpose of the enactment in 1969, again there was a mischief. It was a 1965 Supreme Court decision and Commissioner V. Clay B. Brown, which under the existing tax code, gave exempt organizations a competitive edge, which Congress very swiftly legislatively overruled in the 1969 amendments. The third and final set of precedents which the trial court did not follow is this Court's DAV test. No discussion whatsoever in the trial court. DAV, Disabled Veterans, came from the predecessor court, the Court of Federal Claims, where it talked about the two prongs of the DAV test, competitive and commercial. The DAV test was then adopted and reaffirmed by this court, American Bar Endowment. American Bar Endowment was reversed on appeal, but it was only because the findings of fact by the trial court in that decision, and in fact the US Supreme Court discussed at some length the DAV test without disapproval. Then we have to look in that context whether the two prongs of the DAV test have been met in this particular case. First again, the commercial, competitive and commercial. First I'll deal with commercial. Is the exempt organization's activity here debt-financed, margin trading? Is that a business activity? And again, as I discussed before, the US Supreme Court Burnett decisions and the two US, sorry, the Court of Claims decisions state that it's not a trade or business of investing. Securities investing, it's a De Porta Nova, Court of Claims decision, 1982, and also the Levin decision in 1982. The second prong... You're well into your rebuttal time. Oh yes, thank you. Make sure and reserve it. Yes, I will. Thank you very much, Your Honor, for your time. Ms. Rubin. Thank you. May it please the Court, my name is Jennifer Rubin and I represent the government in this case. With me at counsel's table is tax division intern Andrew Tyler. The question in this case is, should the court apply the plain language of Internal Revenue Code sections 514 and 512B4 or ignore that plain language? If the plain language applies, everyone in the case agrees that the income from taxpayers' margin-financed securities would be subject to the unrelated business income tax. But the question is, is that, was that the principal or main purpose, which I think maybe the government agrees that it was a major purpose in passing these provisions. And the second question is whether or not our case law or the Supreme Court case law compels that we read that purpose into the clear statutory language. Actually, I believe the government has provided substantial materials demonstrating that there were multiple purposes behind section 514, both when it was initially enacted in a limited form in 1950 and in 1969. Assume that this was the principal purpose in enactment. If we assume that unfair competition was the principal purpose, I'd make two points. The first thing is, the actual law that was passed is the text of section 514. And to read in an unfair competition requirement and essentially to bring over the case law and requirements for sections 511 to 513 would essentially read section 514 out of the Act and would also completely rewrite sections 512. Well, would it read it out of the Act or would it just put a gloss on it or an additional criteria that in addition to satisfying everything we've said here, you also have to satisfy the unfair competition? As taxpayers' argument both today and in its briefs make clear, it is essentially attempting to bring over the active trade or business test from sections 511 to 513 and apply it to 514. As section 514b1 makes clear, nothing is taxed under 514. If it's already taxed as an active trade or business under sections 511 to 513. And so we don't see how there's any income that would be captured by section 514 if in fact you were to adopt the test that is being argued by the taxpayer here. Because if it's already taxed as an active trade or business, it's taxed under 511 to 513 and therefore would not be taxed under 514. And everyone in the case agrees that section 514 was added in 1950 to have it a separate category of UBIT and was amended in 1969 to expand the category of UBIT that was initially put in place in 514. And so you would actually, if anything, perhaps even reduce the coverage of 514 by incorporating this unfair competition. The second thing is that this argument that's being put forward by the taxpayer here would really rewrite the principles of statutory interpretation. So instead of looking at the plain language of a statute and generally applying it, you would instead say, okay, now that we've done this, we're going to look into legislative history. And not just look at the legislative history, we're going to limit ourselves to extremely clear statements made in the committee report. What about the proposition Bob Jones and the other cases you cited? Those cases involve situations where there was a very major public policy that was an issue that was going to be undermined by the application in question. So even if we assume, even if we ignore all the different statements of purpose that are found within the legislative history behind section 514, and there are a number of them including protecting revenue sources, preventing substantial amounts of capital from entering into the tax-exempt realm, and from preventing organizations from becoming divorced from their contributors, even if we ignore that and just assume that unfair competition was the only purpose that was in play, what would happen then by doing that is you would turn the committee report and statements in there into the primary source of legislation as opposed to the legislation that was actually passed by the legislature. There's no proof that anybody who voted on this law actually even looked at the committee report. And the Supreme Court has actually argued against looking at committee reports because of the very nature of them. They may be inaccurate or may actually represent an opportunity for a legislator or a staff member. Except that Mr. Bartels has cited cases in which we have used the clear underlying purpose of a statute to affect how the language is construed, right? Yes, but only where there's an extremely clear public policy at issue. And in many of these cases you're talking about a situation where there was maybe an unclear term or a term that the court determined incorporated a common law principle into it. Let's talk about the two cases he cited. First of all, the concept of a clear statement of extraterritoriality. You had a law that on its face could be applied just domestically or also to foreign property and the courts know we're going to require a clear statement that Congress intended to go beyond the nation's bounds. This is a specific context. This is simply not applicable here. The second case that he cites is Bob Jones University where the court said well we are going to read this to say that the concept of charity in the tax code incorporates certain common law standards of charity including the concept that you can't have a charity or charitable organization that is violating clear public policy and in this instance the clear public policy is extraordinarily clear, namely the policy against racial discrimination. There's nothing like that here. There's really as was essentially conceded there's really no argument that there was any that there's some violation of the principle that you don't like unfair competition by saying treat tax otherwise tax exempt entities the same as other investors so that if you're engaging in debt financed investing that debt financed investing is going to be taxed just as if you were any other organization and that shows why these cases that are being cited here are completely the opposite of what they actually stand for. They don't stand for the concept that if a particular application fails to advance the alleged statutory purpose then you should not apply that to the application. Rather it stands for the concept that if it actually undermines a substantial public policy or the purpose of the law basically it's the same principle that this court has applied throughout cases such as Weddell and Time XVI which is if the statutory language is clear you apply it unless it's actually absurd. There's nothing absurd here about the concept that Congress might say we don't want to privilege debt financed income and that is precisely what's happened here. The way the Congress has structured this is that it gives tax exemptions to only certain types of investments from contributions and income generated through the tax exempt function. Otherwise Congress has taken steps both in 1950 and 1969 saying we're not going to privilege other forms of income including from active trader business or including from debt financed property and that is very clearly stated in the text of these laws and it's very clearly stated in the structure of these laws. Moreover even if you were to look at legislative history which we believe the court should not do but if the court were to look at legislative history, legislative history here actually supports the concept that Congress deliberately intended to adopt the broad definition of debt financed property that it did adopt and did enact into law. If you look at the background legislative history from the 1965 Treasury report and the 1966 hearings there are very clear statements that there were concerns about debt financed property that went beyond Clay Brown that actually preceded Clay Brown and that in particular there were concerns that you had a charitable organization, a small number of them attempting to increase their income not by using contributions but by using debt financing that this was specifically a problem. If you look at the House and Senate committee reports they reference one of the main concerns that were raised in this this preceding background which is that this shift of property into the tax exempt realm actually ran a very serious risk of hurting revenues and that was because instead of it being a taxable realm where it could be taxed it was going to be in the tax exempt realm that's going to be done through debt financing. And finally you know you had numerous statements throughout the House and Senate committee reports as to precisely how this bill was supposed to operate. How is this bill supposed to operate? This bill is supposed to operate by taxing debt financed property including corporate stock including investments and that is precisely what was passed. That is what was passed and enacted by Congress. It was a broad definition of debt financed property that would include large and finance securities as well as an exception to the passive exclusions from sections 511 to 13. Let me just ask before you're done. Is there any difference is there any major difference or even a minor difference between this case and the New Haven case decided by the Second Circuit? There isn't. Or the status of the trust or anything else? There is no difference. It was the exact same kind of trust. They were enacted through substantially similar trust declarations. That is actually an operative fact that was stipulated in the court below. They engaged in the exact same practice of margin financing through the exact same broker who received commissions and through the exact same margin lender Bear Stearns who received interest. It was exactly the same. And what's the status of this question and other circuits? Do they all agree or is there something in this third is there a third circuit opinion that seems to be contrary? I think the Court of Claims cited a third circuit opinion. The third circuit was cited by the Court of Federal Claims but actually every court to deal with section 514 has applied its plain terms. I think that if you look in the Third Circuit there was a discussion about unfair competition in there but ultimately that was a margin finance securities case. This was the Elliott-Knitwear case and just like every other case that has dealt with it, it's determined that 514 has applied. I mean there's only been a total of nine cases including this one that have actually interpreted section 514 as opposed to the large number of cases dealing with 511 to 513 cited by taxpayer. Every single case, every single one of them that has had the opportunity to interpret section 514 has held that it's clear and has applied the clear language. That includes Elliott-Knitwear, that includes the Bartels-UNH case in the Second Circuit, that includes the cases just throughout this country. It's very clear and it would be completely contrary to each of these cases and would be a conflict with them to determine that the plain language does not apply here. Are there any further questions? Mr. Bartels, you've got a little over two minutes. Yes, thank you, Your Honor. There are three reasons with respect that this court would not be able to follow the Second Circuit's decision in the year 2000 in the UNH trust case. First, the Second Circuit does not have its own decaying rule decisions such as this court's which it, the Second Circuit, could rely. The second reason is the Second Circuit does not have its own American College of Physicians decision regarding the singular policy of the UBIT upon which it, the Second Circuit, could rely. Third and most importantly, the Second Circuit does not have the DAV test upon which it, the Second Circuit, could rely. The bottom line is that these three sets of Federal Circuit precedents in which the Second Circuit does not have should cause this court to reach the opposite conclusion regarding an exempt organization's margin invested income. Thank you.